**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nikola Corporation, | No. CV-18-01344-PHX-JAS (BPV) |
| Plaintiff, | **REPORT AND** |
| v. | **RECOMMENDATION** |
| Tesla Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Tesla Incorporated's Motion to Transfer Venue. (Doc. 44.) Plaintiff filed a response in opposition (Doc. 50), and Defendant filed a reply (Doc. 52). Tesla asks the Court to transfer this matter to the Northern District of California. (Doc. 44 at 2.) Tesla states that the Court may consider the transfer prior to consideration of the pending Motion to Dismiss, and Plaintiff does not express its opinion about which motion should be determined first. *Id.* This Court recommends that the case be transferred to the Northern District of California, and that the District Judge deny the pending Motion to Dismiss as moot.

Nikola filed a claim in the District of Arizona, alleging that Tesla's prototype design for its semi-truck infringes upon Nikola's patents. (Doc. 1 at 26-27.)[1] At the time of filing, Nikola was a Delaware corporation with its current place of business in Salt Lake City, Utah. *Id.* at 5, ¶26. Tesla is a Delaware corporation with its principal place of

---

[1] Nikola has subsequently filed two amended complaints, but for the purposes of determining whether to transfer, the Court considers the facts that existed at the time the case was brought. *See Ventriss v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007).

business in Palo Alto, California. *Id.* at 5, ¶ 27. At a glance, there is no reason for this case to be heard in the District of Arizona. However, Nikola's complaint contended that jurisdiction was proper because it "announced that it is moving its headquarters to Arizona in July" and would relocate its manufacturing facility to either Buckeye or Coolidge, Arizona. (Doc. 1 at 5 ¶ 26; Doc. 50 at 4.)

## I. TESLA'S MOTION TO TRANSFER VENUE

Tesla argues that this matter is best suited in the Northern District of California. First, it states that Nikola's choice of forum should be given little weight because, at the time of filing, Nikola merely had plans to relocate its headquarters to Arizona, and had yet to actually relocate. (Doc. 44 at 2.) In addition, Arizona has no connection to the underlying allegations in this matter: the patent infringement occurred in California and Utah, but not in Arizona. (Doc. 52 at 2.)

Second, the Northern District of California is more convenient because all of Tesla's witnesses reside in California and there are far more Tesla witnesses than Nikola witnesses. (Doc. 44 at 3, 11.) Even though Tesla has employees and showrooms in Arizona, the Arizona employees did not participate in the creation of the semi-truck at issue and the Arizona showrooms market passenger vehicles, not the semi-truck. *Id.* at 10. Furthermore, Tesla employees who live outside of Northern California regularly travel there for work. *Id.* at 7-8. Because of this, it is far less expensive to have the limited number of Nikola witnesses travel to California than the numerous Tesla witnesses to Arizona. *Id.* Moreover, some of Tesla's witnesses are beyond this district's subpoena power, but could be compelled to appear in Northern California. *Id.* at 9.

Third, transfer is appropriate because a majority of the evidence is located in Northern California where the semi-truck was developed. *Id.* at 11.

Finally, the Northern District of California has a greater interest in the outcome of this case and greater experience with patent litigation. *Id.* at 12.

///

///

## II. NIKOLA'S RESPONSE

Nikola responds that it does have connections with Arizona, and Tesla has not met its burden of making a "strong showing" that transferring this case to the Northern District of California is prudent. (Doc. 50 at 1, 6.) At the time of filing, Nikola: (1) said it was relocating to Arizona; (2) was negotiating a possible incentive package in Arizona; (3) had leased property in Arizona; and (4) was approved to do business as a foreign for-profit business in Arizona. *Id.* at 2. In addition, Nikola claims that Tesla's two sales centers in Arizona demonstrate that it has engaged in acts of patent infringement in Arizona by offering the semi-truck to Arizona residents. *Id.* at 10.

Second, Nikola asserts that it has four named witnesses who are or will be living in Arizona during the pending litigation, and some Arizona employees who will be testifying as to damages. *Id.* at 7-8. In addition, Nikola claims the lack of subpoena power over Tesla's employees is a non-issue because depositions may be taken and video conferencing utilized. *Id.* at 9. It argues that changing venues merely switches the inconvenience from one party to another. *Id.* at 12.

Third, Nikola contends that a majority of the evidence is not located in Northern California because all of Nikola's documents and its patented Nikola One semi-truck will be moved to Phoenix by approximately October 2018. (Doc. 50 at 9; Doc. 50-1 at 12.) Nikola claims that since Tesla drives its semi-truck from Utah to California, it can easily make a pit stop in Arizona if necessary. (Doc. 50 at 10.) In the alternate, Tesla can simply submit photos instead of having the Court physically inspect the infringing material. *Id.*

Finally, Nikola claims that Arizona has an interest in the matter at issue. *Id.* at 2.

Both parties allege the other is engaging in forum shopping. (Doc. 44 at 6; Doc. 50 at 7.)

## III. STANDARD OF REVIEW

The court determines whether a transfer of venue is appropriate based on the parties' circumstances at the time of filing. *See Ventriss*, 486 F.3d at 1118; *see also In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013). The District Court, in its discretion,

may transfer any civil action to any other district in which the case may have been filed "[f]or the convenience of the parties and witnesses" or "in the interest of justice." 28 U.S.C. § 1404(a); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Plaintiff's choice of venue is given "substantial weight," *N. Acceptance Trust v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1970), and may only be upset if defendant "make[s] a strong showing of inconvenience," *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Ninth Circuit considers several factors when determining whether a change of venue is appropriate, including:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498–99 (2000). Transfer may not be based merely on a shifting of inconveniences. *Van Dusen v. Barrack*, 376 U.S. 612, 645–466 (1964); *Managed Protected Srvcs., Inc. v. Credo Petroleum Corp.*, No. 12–CV–00080–PHX–GMS, 2012 WL 3264515, at *4 (D. Ariz. Aug. 9, 2012).

The parties do not dispute that venue is proper in either the District of Arizona or the Northern District of California.

**IV.   DISCUSSION**

    **a.   Contacts Related to the Plaintiff's Claims in the Chosen Forum**

The alleged infringing actions giving rise to this suit occurred in Northern California, and the alleged resulting injury in Utah. This Court has no connection with the underlying facts in this matter.

Nikola attempts to argue that since it is now located in Arizona and plans to invest in the local economy, then Arizona is a proper venue because it has an interest in protecting its residents from injury. (Doc. 50 at 10.) However, none of the alleged events

- 4 -

occurred in Arizona, and the injury is not to its residents–though continued patent infringement arguably may cause future injury to Nikola employees who are Arizona residents.

Furthermore, Nikola's argument that Tesla's Arizona showrooms and Arizona employees create a factual basis in Arizona is not compelling. The complaint does not assert that any of the infringing activities occurred in Arizona, the showrooms do not market the semi-truck at issue, and the employees are not involved in the development or sale of Tesla's semi-trucks.

Moreover, the Northern District of California has far greater interest in the outcome of these proceedings because the alleged infringement occurred there. *See Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232-33 (9th Cir. 2011) (California has interest in litigating lawsuits against local corporations causing harm in different jurisdictions). Arizona's lack of connection to the facts underlying this claim and Northern California's greater interest in the matter weighs in favor of transferring this case to the Northern District of California. *See Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987) ("If the operative facts have not occurred within the forum and the forum has no interest in the parties of subject matter, [the plaintiff's] choice is entitled to only minimal consideration."); *Am. Sec. Ins. Co. v. Norcold, Inc.*, No. 10–CV–954–PHX–GMS, 2010 WL 2991585, at *2 (D. Ariz. July 26, 2010) (granting transfer when no facts alleged had connection to Arizona even though defendant sold products in Arizona).

### b.  State Most Familiar with Governing Law

This factor is neutral, since both courts would utilize federal law, and both courts are capable of doing so. *CSR Tech., Inc. v. Bandspeed, Inc.*, CV–11–1948–PHX–GMS, 2012 WL 1150863, at *6 (D. Ariz. Apr. 5, 2012).

### c.  Nikola's Choice of Forum and Parties' Contacts with Forum

Nikola claims it filed the instant complaint in the District of Arizona in anticipation of its future move. Nikola filed immediately after it received approval to do business as a foreign for-profit business in Arizona. (Doc. 50 at 3.) Since then, Nikola

alleges that it has moved most of its documents to Arizona. *Id.* at 9. Sometime before the end of the year, Nikola also claims that the physical manifestation of its patented semi-truck will be relocated to Arizona as well. *Id*. Finally, as of the date of Nikola's response, it has leased and opened a facility in Phoenix, and has announced plans to build a manufacturing plant in Coolidge. *Id.* at 2.

In contrast, Tesla has merely two sales rooms in Arizona, none of which sell, market, or produce the alleged infringing semi-truck. (Doc. 44 at 10.) Furthermore, Tesla's Arizona employees have no connection to the current litigation. *Id.*

The Court evaluates this factor based on the circumstances that existed at the time the claim was brought. *See Ventriss*, 486 F.3d at 1118. Because at the time of filing Nikola's contacts with this forum were slim and somewhat speculative, and Tesla's contacts with Arizona had nothing to do with the development and production of the semi-truck at issue in this litigation, the Court finds this factor weighs in favor of Tesla.

### d. Costs of Litigation

Both parties argue that they would incur substantial costs if forced to present witnesses, documentary evidence, and their version of the semi-truck in an unfavorable venue. This factor weighs in favor of Tesla for the following reasons.

First, the Ninth Circuit has confirmed that in patent litigation "the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genetech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 330 (E.D.N.Y. 2006). Here, all of Tesla's evidence is located in Northern California.

Second, both parties argue that physically transporting their version of the semi-truck for viewing will be costly. However, in patent litigation, the court compares the infringing product with the patent design, not the physical manifestation of the patent. *See e.g., DCNL, Inc. v. Almar Sales Co.*, No. C–97–3738 DLJ, 1997 WL 913941, at *9 (N.D. Cal. Dec. 22, 1997) ("For a claim of design patent infringement, the question is

whether the design of the accused device infringes on the design patent, not whether the patentee's commercial embodiment of the claimed design is infringed. . . . Thus, the [commercial embodiment] is irrelevant to plaintiffs' patent infringement claim."); *Sun Hill Indus. Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995), *abrogated on other grounds* by *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed Cir. 2008). Therefore, it is far more likely that the litigating court will require Tesla to provide its semi-truck than Nikola.

Finally, the Court notes that Nikola anticipated a move to Arizona, and so it filed the complaint in the District of Arizona–Phoenix. This case was initially assigned to Judge G. Murray Snow, who presides over cases in the Phoenix courthouse. The case has since been transferred to Judge James A. Soto, and referred to the undersigned, both of whom preside over proceedings in Tucson. Therefore, both parties will be inconvenienced because both will have to travel to Tucson for hearings and possibly trial. While the inconvenience is slight for Nikola regardless of whether this Court transfers venue or not, Tesla will benefit substantially if granted a change in venue. *See Aircraft Mech. Fraternal Ass'n v. Sw. Airlines Co.*, CV–16–04435–PHX–GMS, 2017 WL 1384296, at *3 (D. Ariz. Apr. 18, 2017) (It is not merely a shifting of inconvenience when "one party will be inconvenienced no matter what, while the other could benefit significantly from a transfer to a more convenient location.")

### e. Witness Availability

At the time of filing, Nikola stated that one employee lived in Arizona. (Doc. 50 at 7.) Since then, in its response, Nikola has named three potential witnesses, two living in Arizona and one who may be moving here. *Id.* at 8. In total, Nikola has 60 current employees, but it fails to allege how many of these employees may be called to testify. *Id.* at 4. Nikola merely states that there other employees testifying as to damages that live in Phoenix. *Id.* at 8. In addition, Nikola's Second Amended Complaint lists a potential witness and Nikola employee Markus Scholten who resides in Irvine, California. (Ex. 5, Doc. 48-1 at 29.) Like Tesla's employees living in Los Angeles, Scholten is not subject to

1 this Court's subpoena power, but could likely be compelled to travel to Northern California.

In contrast, all of Tesla's witnesses reside either in Northern California or Los Angeles, while none live in Arizona. Tesla has claimed that it would likely have employees from its design team, engineering team, and sales and reservations team as foreseeable witnesses. (Doc. 44 at 9.) In addition, Tesla explicitly named five potential witnesses, all of whom can travel to the District Court in Northern California more readily than Arizona because they regularly make the trip for work, and could incorporate any court appearances into their work schedule. *Id.* at 7-8. Furthermore, because of the number of people Tesla employs, it claims that there are potentially many more witnesses from Tesla than from Nikola. (Doc. 52 at 5.)

Regardless of the venue, there will be witnesses beyond the subpoena power of the Court, and either court may need to employ depositions or video conferencing to obtain testimony. The ability to "compel the testimony of important witnesses is an important consideration in transfer motions." *See Credo*, 2012 WL 3264515, at \*3 (quoting *Arrow Elecs., Inc. v. Ducommun, Inc*, 724 F.Supp. 264, 266 (S.D.N.Y. 1989)). Of course, courts would prefer in-person testimony over depositions or video conferencing. *Id.* Given the number of witnesses alleged in the pleadings, conducting proceedings in Arizona would cause more witnesses to be beyond this Court's subpoena power and would likely require more witnesses to testify remotely.

Both parties agree that a strong factor in deciding venue is the convenience of the forum to potential witnesses. (Doc. 50 at 8; Doc. 52 at 4); *see also Genetech*, 566 F.3d at 1343. There are more potential witnesses located in California, these witnesses can incorporate travel to Northern California with work, and one of Nikola's witnesses is already located in California. Furthermore, transferring the case to Northern California will allow for more in-person testimony from witnesses.  These factors weigh in favor of transfer.

///

### f. Access to Sources of Proof

Given the increasing ease of providing documentary discovery through electronic means, the Court does not find that Nikola's contention that all of its documents have been transferred to Arizona a compelling reason to keep this case in Arizona. Furthermore, witness testimony is more convenient in Northern California and Tesla's semi-truck is more accessible. Given the aforementioned reasons, the convenience of the parties and witnesses and the interests of justice weigh in favor of transferring this matter to the Northern District of California.

## V. MOTION TO DISMISS

Because the court recommends that the District Judge grant Tesla's Motion to Transfer, it also recommends that the District Judge deny the pending Motion to Dismiss as moot. *See Chartis Speciality Ins. Co. v. United States*, CV–12–10579–JGB (JCX), 2013 WL 12140990, at *4 (C.D. Cal. Mar. 29, 2013) ("As the Court grants Defendant's Motion to Transfer Venue, it need not address Defendant's Motion to Dismiss.").

## VI. RECOMMENDATION

For the reasons stated, the Court recommends that the District Judge enter an Order:

1. Finding that Tesla has made a substantial showing favoring transfer of this matter to the Northern District of California;
2. Denying Tesla's Motion to Dismiss (Doc. 26) as moot; and
3. Granting Defendant Tesla's Motion for Transfer of Venue (Doc. 44).

Pursuant to 28 U.S.C. § 636(b) and the Federal Rules of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objection. Filed objections should use the following case number:

**No. CV-18-01344-JAS.**

Failure to timely object to the factual and legal determinations of the Magistrate Jude may waive Petitioner's right to *de novo* review. The Clerk of Court shall send a copy of this Report and Recommendation to all parties.

Dated this 29th day of October, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge